## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**OSBALDO FLORES,**

        **Plaintiff,**

**v.**                                                    **Cause No.:**

**CITY OF LAS CRUCES,**
**a New Mexico municipality,**

**JONATHON DAVIS, AND ISAIAH BAKER,**
**in their individual capacity,**

        **Defendants.**

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983 AND THE NEW MEXICO TORT CLAIMS ACT

Plaintiff Osbaldo Flores, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, Cooperating Attorney for American Civil Liberties Union of New Mexico Foundation (ACLU), and ACLU, by Leon Howard and Maria Martinez Sanchez, hereby brings this Complaint pursuant to 42 U.S.C. § 1983 for retaliation, illegal entry, excessive force, illegal arrest, and malicious prosecution; and under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-12 (1977) for assault, battery, false arrest, false imprisonment, malicious abuse of process, deprivation of state and federal constitutional rights pursuant to the State and Federal Constitution, and negligent training and supervision.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant 28 U.S.C. §§ 1331, 1343, and 1367.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 as all Defendants are residents of New Mexico, and all acts complained of occurred in the District of New Mexico, in Dona Ana County.

## PARTIES

3.      Plaintiff Osbaldo Flores, is and was at all relevant times an adult resident of Las Cruces, Dona Ana County, New Mexico.

4.      Defendant, City of Las Cruces ("City"), is a municipality and governmental entity in the State of New Mexico.  The Las Cruces Police Department ("LCPD") is a subsidiary agency of the City.

5.      Defendant City is sued under the New Mexico Tort Claims Act (TCA) for damages under a theory of failure to train and supervise, and vicarious liability for the actions of Defendants Davis and Baker.

6.      Defendant Jonathon Davis is sued in his individual capacity pursuant to the TCA and 42 U.S.C. § 1983.  At all relevant times, Defendant Davis was acting under color of state law within his capacity as a law enforcement officer of the City in the course and scope of his employment.

7.      Defendant Isaiah Baker is sued in his individual capacity pursuant to the TCA and 42 U.S.C. § 1983.  At all relevant times, Defendant Baker was acting under color of state law within his capacity as a law enforcement officer of the City in the course and scope of his employment.

## FACTUAL BACKGROUND

8.      On June 2, 2016, Las Cruces police were parked on a residential street, investigating what they thought might be a stolen car.

9.      Plaintiff Osbaldo Flores, who lived on that street, walked up to the patrol car of Defendant Jonathan Davis.

10.     Mr. Flores attempted to ask what Defendant Davis was doing on his street and raised his voice to get the Defendant's attention through the car window.

11.     Defendant Davis found Mr. Flores distracting.

12.     Another Officer stopped the suspicious car, and Defendant Davis drove away to the stop.

13.     Mr. Flores thought Defendant Davis was going after the car because it had made a rolling stop at a stop sign.

14.     Mr. Flores felt that the police were just trying to "generate revenue" by writing tickets.

15.     After the traffic stop, Defendant Davis came back to Mr. Flores's street.

16.     Mr. Flores told him to "go collect revenue somewhere else."

17.     At that point, Mr. Flores's neighbor, Ricardo Holguin, came out of his house because he heard his dogs barking.

18.     Mr. Holguin saw Mr. Flores standing on the sidewalk, holding up his cell phone toward the police car like he was filming it, saying things like "This is the taxpayers' money!" and "This is what our servants [do]."

19.     Mr. Holguin described Mr. Flores's volume as "saying" rather than "yelling."

20.     Defendant Davis got out of his car to talk to Mr. Holguin, and he turned on his lapel camera, which recorded what happened next.

21.     A second officer, Defendant Isaiah Baker, had been there to assist with the traffic stop; he walked over to Mr. Flores.

22.     Both Defendants later said Mr. Flores was "yelling," but Defendant Davis's lapel video shows him standing still, not visibly or audibly yelling.

23.     From the video, it is not clear that Mr. Flores was speaking at all when the Defendants approached him and Mr. Holguin.

24.     Defendant Davis walked up Mr. Holguin's driveway. "Hello, sir!" Defendant Davis called to Mr. Holguin, over the sound of dogs barking. "Was the guy out here disturbing your peace? The guy out here, yelling—was he disturbing your peace?"

25.     Mr. Holguin made a dismissive gesture. "Nah, he's just a nut, man."

26.     Mr. Holguin said he had come outside because he heard his dogs. Mr. Holguin went on to say that there was something wrong with Mr. Flores and that Mr. Flores did not like police.

27.     Mr. Holguin did not say that Mr. Flores was bothering him or being loud that day.

28.     Mr. Holguin did not ask Defendant Davis to speak with Mr. Flores.

29.     Mr. Holguin did not express interest in pressing charges against Mr. Flores.

30.     Mr. Holguin testified that Defendant Davis "asked me if [Mr. Flores] was bothering me—I said no."

31.     There were no complaints from other neighbors, and Mr. Holguin was the only witness whom the Defendants interviewed.

32.     Defendant Davis walked down the sidewalk to where Mr. Flores was standing with Defendant Baker.

33.     The two men were speaking, and Mr. Flores was holding his cell phone up, as though he was recording a video.

34.     Mr. Flores was telling Defendant Baker that the police "were pirating in the neighborhood to pay [their] salaries."

35.     As Defendant Davis got closer to Mr. Flores, Mr. Flores turned his phone toward him, held up his free hand in a "stop" gesture and said firmly, "Step back."

36.     Defendant Davis continued to walk closer, and Mr. Flores repeated, "Stay away from me."

37.     "Sir, your yelling has caused people to come out of their house," said Defendant Davis.

38.     Davis asked: "Do you have identification?"

39.     Mr. Flores responded: "I don't need to identify myself to you, because I have not committed a crime, and I do not have to—"

40.     "The crime is disorderly conduct," said Defendant Davis, talking over Mr. Flores.

41.     Mr. Flores denied that he had committed the crime of disorderly conduct.

42.     Defendant Davis said: "Your yelling has caused somebody to come out of their residence and to come see what you're doing."

43.     Mr. Flores said, "That ain't no crime. Trust me, I've read the Constitution, and I know plenty well."

44.     Defendant Davis then asked: "Do you have identification, sir?"

45.     Mr. Flores responded: "I don't have to identify myself to you."

46.     He turned back to Defendant Baker, camera still up, and said, "Now you guys can go generate revenue somewhere else."

47.     Defendant Baker started to talk. "Let me explain something to you, okay? If you don't—let me finish talking and we'll leave you alone!"

48.     "I don't need to talk to you guys," said Mr. Flores.

49.     "Okay, then listen!" said Defendant Baker.

50.     "And you guys don't need to be here," said Mr. Flores. "We're in a residential area, and you guys are—we don't like cops here."

51.     At the same time, Defendant Baker continued saying, "I'm going to give you advice. I'm going to give you advice. If you keep yelling"—Defendant Baker raised his voice enough that Mr. Flores stopped talking—"and you keep screaming, and you keep causing people to come outside, you will be arrested for disorderly conduct."

52.     Mr. Flores started to respond, but Defendant Baker yelled over him, "That's it! That's period! End of story! There's no—nothing else to talk about!"

53.     "The law is the law, which is the Constitution," said Mr. Flores. "Police department, police procedure, is not law."

54.     Defendant Baker cut in again: "I don't want to listen to your nonsense!"

55.     "Well, let me tell you this," said Mr. Flores.

56.     "You're talking gibberish," said Defendant Baker, "because you're trying to be smarter than you really are."

57.     Over him, Mr. Flores said, "Police officers cannot be the ones to file a public disturbance call."

58.     "The people that came outside," said Defendant Baker.

59.     "They didn't file a complaint," said Mr. Flores.

60.     "Yes they did," said Defendant Baker.

61.    "No they didn't," said Mr. Flores. "No they didn't."

62.    "Yes they did," repeated Defendant Baker.

63.    "Yeah," said Defendant Davis, who had just spoken with Mr. Holguin. "I just witnessed them."

64.    Mr. Flores kept his attention on Defendant Baker. "Right," Mr. Flores said sarcastically, "because you were there, right, and you saw them, and you heard everything they said."

65.    Defendant Baker had been standing with Mr. Flores the whole time Defendant Davis spoke with Mr. Holguin.

66.    Mr. Flores knew that Defendant Baker had no idea what any witnesses had said.

67.    "We talked to him," said Defendant Baker.

68.    "You talked to him, right," said Mr. Flores.

69.    "This officer did, but—" said Defendant Baker.

70.    "You talked to him, and you're including yourself in the conversation," said Mr. Flores.

71.    Defendant Davis cut in. "Sir, what's your last name?"

72.    Mr. Flores again told Defendant Davis that he did not have to identify himself.

73.    Regardless, Defendant Davis asked: "Sir, what's your last name, sir?"

74.    "I don't have to identify myself to you," repeated Mr. Flores.

75.    "Yes, you do," said Defendant Davis.

76.    "Unless you suspect me of committing a crime," continued Mr. Flores.

77.    "I do," said Defendant Davis. "I have reasonable suspicion to gather information."

78.    "Well, what's your crime? Articulate your suspicion."

79.    "Disorderly conduct," said Defendant Davis. "I'm going to ask you one more time for your identification, or you're going to give me your name and date of birth."

80.    Mr. Flores said, "Articulate your suspicion."

81.    Mr. Flores then turned away, saying something like, "I don't have time for you guys," and started to walk back to his house.

82.    Defendant Davis followed him.

83.    After three steps, Mr. Flores looked behind him, then ran the last few steps into his yard.

84.    His yard was completely enclosed by a chain link fence.

85.    Defendant Baker would later testify that Mr. Flores was "given a command to stop," but this is not audible on Defendant Davis's lapel video.

86.    When Mr. Flores got to his gate at the chain link fence, he opened the gate, ran inside, and closed it behind him.

87.    Defendant Davis ran after him, reaching for Mr. Flores over the fence, and Mr. Flores yelled, "Do not fucking come in my yard, dude!"

88.    Defendant Davis grabbed Mr. Flores and pushed his way into the yard.

89.    Defendant Baker then deployed his taser on Mr. Flores.

90.     After which both Defendants grabbed Mr. Flores by the arms and neck.

91.    They pushed Mr. Flores to his knees, shouting, "Stop resisting!"

92.    Mr. Flores's dogs ran toward him, and he said, "My dogs are going to get hurt, man, please."

93.    He bent down over a dog, and Defendant Baker, at point-blank range, sprayed pepper spray around both sides of Mr. Flores's face.

94.     Mr. Flores kept saying that he had not committed a crime.

95.     The Defendants pushed Mr. Flores's face to the ground.

96.     Defendant Baker planted his knee on Mr. Flores's head and neck as Defendant Davis handcuffed him.

97.     Defendant Davis's and Baker's multiple uses of force caused injury to Mr. Flores that was substantial, and more than de minimus.

98.     Mr. Flores was arrested and charged with six petty misdemeanor charges under the Las Cruces Municipal Code.

99.     The charges included disorderly conduct, assault on a peace officer, two counts of resisting or evading an officer, and one count of concealing identity.

100.    No probable cause existed for any of these charges.

101.    Mr. Flores was tried in Las Cruces Municipal Court, where he proceeded pro se and was acquitted of disorderly conduct and assault on a peace officer.

102.    He was convicted of two counts of resisting or evading an officer and one count of concealing identity, and he appealed those convictions to district court for a trial de novo.

103.    In the trial de novo, Judge Beyer convicted Mr. Flores of the three charges before her.

104.    Judge Beyer sentenced Mr. Flores to 180 days' incarceration, suspended on the condition that he seek counseling.

105.    Mr. Flores timely appealed, resulting in a stay of the sentence.

106.    The appeal is pending before the New Mexico Court of Appeals.

### COUNT I: UNLAWFUL RETALIATION FOR EXERCISE OF CONSTITUTIONALLY PROTECTED ACTIVITY IN VIOLATION OF THE FIRST, FOURTH AND FOURTEENTH AMENDMENTS AGAINST DEFENDANTS DAVIS AND BAKER

107.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

108.    When Plaintiff told Defendants Davis and Baker words to the effect that they should "generate revenue somewhere else" as well as other speech critical of how they were exercising their job duties, began filming them, continued filming them when they contacted him, and later told them words to the effect that he did not have to identify himself because he was not committing a crime, and other speech, he was exercising constitutionally protected rights including the right to freedom of speech protected by the First Amendment.

109.    When Mr. Flores told Defendant that he did not have to produce identification because he was not under suspicion of a crime, he was exercising his rights as protected by the Fourth Amendment.

110.    Defendants reaction to this protected conduct, and protected speech including, but not limited to the following: forcefully and illegally entering the curtilage of his home by pushing the gate to his front yard open; using force on him, including deploying a taser multiple times, using pepper spray, placing a knee on his head and pressing it to the ground; seizing him, including detaining, handcuffing and arresting him without probable cause; and charging him with criminal conduct for which there was no probable cause, caused Mr. Flores injury that would chill a person of ordinary firmness from continuing to engage in constitutionally protected activity, including the speech that he engaged in and refusal to identify himself.

111.    There was a causal connection between Mr. Flores's protected conduct and protected speech, and Defendant Davis and Baker's reaction.  Their reaction was taken in response to Mr. Flores's exercise of his First Amendment right to free speech and Fourth Amendment right not to produce identification.

112.    This reaction amounts to retaliation.

113.    Defendant's retaliation proximately caused Mr. Flores injuries and damages.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendants, together with all costs and attorneys' fees.

## COUNT II: UNLAWFUL ENTRY IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AGAINST DEFENDANTS DAVIS AND BAKER

114.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

115.    Defendants Davis and Baker unlawfully entered Mr. Flores's curtilage without probable cause or reasonable suspicion, or any other recognized exception for doing so when they forced their way into his gated front yard after he attempted to close the gate.

116.    At the time of this entry, Defendants Davis and Baker had no reason to believe he had committed or was about to commit a felony.

117.    At the time of this entry, Defendants Davis and Baker had no lawful grounds to enter his enclosed front yard.

118.    Defendants' entry into Mr. Flores's yard without a justifiable basis was objectively unreasonable, intentional, willful, wanton, obdurate, and in gross and reckless disregard of Mr. Flores's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

119.    The unlawful entry into Mr. Flores's yard by Defendants proximately caused his damages.

WHEREFORE Plaintiff requests compensatory and punitive damages, attorney's fees, costs and any other damage available by law

## COUNT III: EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT AGAINST DEFENDANTS DAVIS AND BAKER

120.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

121.    Defendants used physical force in seizing, detaining and arresting Plaintiff, including but not limited to deploying a tazer, using pepper spray or mace, tackling, battering and handcuffing Mr. Flores, even though he posed no danger to anyone, and no legitimate law enforcement objective was achieved by use of this degree of force.

122.    The use of force by Defendants against Plaintiff was excessive and objectively unreasonable under the circumstances.

123.    The actions of Defendants were intentional, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

124.    The use of excessive force by Defendants proximately caused damages and injuries to Plaintiff, including serious personal, physical injuries.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendants, together with all costs and attorneys' fees allowed by law.

## COUNT IV: ILLEGAL SEIZURE AND ARREST IN VIOLATION OF THE FOURTH AMENDMENT AGAINST DEFENDANTS DAVIS AND BAKER

125.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

126.    At all times material hereto, Plaintiff had the constitutional right to be free from unlawful seizure, arrest, and detention.

127.    Defendants Davis and Baker caused Mr. Flores to be seized, arrested and detained without probable cause to believe he had committed a crime and without any other reasonable and legal ground for an arrest.

128.    Mr. Flores's seizure, arrest and incarceration was without a justifiable basis and was objectively unreasonable, intentional, willful, wanton, obdurate, and in gross and reckless

disregard of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

129.    The unlawful seizure, arrest and incarceration of Mr. Flores proximately caused him damages.

130.    Defendants Davis and Baker failed to exercise their duty to ensure Mr. Flores's right to be free from illegal seizure, arrest, and detention was not violated and their actions were not objectively reasonable.

131.    Defendants' actions were intentional, willful, wanton, obdurate, and in gross and reckless disregard of Mr. Flores's rights under the federal constitution.

WHEREFORE Plaintiff requests compensatory and punitive damages, attorney's fees, costs and any other damage available by law.

## COUNT V: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT AGAINST DEFENDANTS DAVIS AND BAKER

132.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

133.    Defendants Davis and Baker actions caused Mr. Flores to be prosecuted criminally six separate charges.

134.    No probable cause existed for these charges.

135.    Defendants Davis and Baker made material misstatements of fact and omissions of material facts which caused Mr. Flores's prosecution.

136.    These misstatements and omissions were intentionally or recklessly misleading.

137.    Without these misstatements and omissions, probable cause would not exist for Mr. Flores's prosecution.

138.    Defendants Davis's and Baker's actions in causing Mr. Flores's prosecution were intentional or in reckless disregard for the truth.

139.    The prosecution terminated in favor of Mr. Flores for the charges of disorderly conduct and assault on a police officer.

140.    Mr. Flores's prosecution was not supported by probable cause.

141.    Mr. Flores's prosecution proximately caused her damages.

WHEREFORE Plaintiff requests compensatory and punitive damages, attorney's fees, costs and any other damage available by law.

### COUNT IV: STATE LAW TORT CLAIMS AGAINST ALL DEFENDANTS

142.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

143.    Defendants Davis and Baker intentionally and negligently caused the battery, assault, false arrest, false imprisonment, malicious prosecution, malicious abuse of process and deprivation of Federal and State constitutional rights of Plaintiff.

144.    Defendants Davis and Baker were acting within the scope of their duties as law enforcement Defendants when they committed these torts against Plaintiff.

145.    The tortious actions of Defendants proximately caused Plaintiff's damages and injuries.

146.    Defendant City of Las Cruces, as Defendants Davis and Baker's employer, is vicariously liable for torts committed within the course and scope of their duties as a law enforcement Defendant.

147.    Defendant City of Las Cruces failed to properly train and supervise Defendants Davis and Baker, which proximately caused Plaintiff's damages.

WHEREFORE, Plaintiff requests all damages available by law against Defendants.

### JURY TRIAL DEMAND

Plaintiff hereby requests a jury on all counts so triable.

Respectfully submitted,
THE LAW OFFICE OF RYAN J. VILLA

By:   */s/ Ryan J. Villa*
RYAN J. VILLA
Cooperating Attorney for American Civil
Liberties Union of New Mexico Foundation
2501 Rio Grande Blvd NW, Suite A
Albuquerque, NM 87104
T: (505) 639-5709
F: (505) 433-5812
ryan@rjvlawfirm.com

*/s/ Leon Howard*
Leon Howard
María Martínez Sánchez
ACLU OF NEW MEXICO
P.O. Box 566
Albuquerque, NM 87103
T: (505) 266-5915 Ext. 1008
F: (505) 266-5916
lhoward@aclu-nm.org
msanchez@aclu-nm.org


*Counsel for Plaintiff*